Bobby Saadian, SBN 250377
bobby@wilshirelawfirm.com
Justin F. Marquez, SBN 262417
justin@wilshirelawfirm.com
Thiago M. Coelho, SBN 324715
thiago@wilshirelawfirm.com
Robert J. Dart, SBN 264060
rdart@wilshirelawfirm.com
Patty W. Chen, SBN 322992
patty@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff*
*and Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WOODS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED d/b/a QUEST DIAGNOSTICS INCORPORATED OF NEVADA, a Nevada corporation; OPTUM360 LLC, a Delaware limited liability company; AMERICAN MEDICAL COLLECTION AGENCY a/k/a RETRIEVAL-MASTERS CREDITORS BUREAU, INC., a New York corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Plaintiff Mark Woods ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action based upon his personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of his attorneys.

## NATURE OF THE ACTION

1.    Defendant Quest Diagnostics Incorporated d/b/a Quest Diagnostics Incorporated of Nevada ("Defendant" or "Quest") is a medical clinical laboratory which offers access to diagnostic testing for a variety of purposes throughout the United States, the United Kingdom, Mexico, and Brazil.  Thousands of patients come to Quest every week for medical treatment, trusting Quest with their sensitive medical and personal information.

2.    Defendant Optum360 LLC ("Defendant" or "Optum") is a revenue cycle management provider which partners with medical providers such as Quest to provide billing solutions.  Thousands of patients count on Optum every week to handle their sensitive medical and personal information with care in creating billing solutions.

3.    Defendant American Medical Collection Agency a/k/a Retrieval-Masters Creditors Bureau, Inc., ("Defendant" or "AMCA"), is a collection agency which partners with medical providers and billing companies to handle bills which are in collection.  Thousands of patients also count on AMCA to handle their sensitive medical and personal information with care.

4.    These patients reasonably expect the highest level of protection for their private identifiable information, when giving highly sensitive information such as their Social Security numbers and medical information to Defendants.  What these patients do not expect, and did not expect, during the period between August 1, 2018 and March 30, 2019, was that their personal and sensitive information would be harvested by unauthorized individuals.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

2

5.      Plaintiff, individually and on behalf of those similarly situated persons (hereafter, "Class Members"), brings this class action to secure redress against Defendants for their reckless and negligent violation of patient privacy rights. Plaintiff and Class Members are individuals who were patients of Quest, and/or whose billings were handled by Optum and/or AMCA during the period of August 1, 2018 to March 30, 2019.

6.      Plaintiff and Class Members suffered significant injuries and damages. On information and belief, the security breach compromised the full names, addresses, phone numbers, Social Security numbers, services performed and diagnosis information, driver's license information, health insurance information, referring provider information, medical record number, dates of service, and other private identifiable information (referred to collectively as "PII") of Plaintiff and the Class Members.

7.      As a result of Defendants' wrongful actions and inactions, unauthorized individuals gained access to and harvested Plaintiff's and Class Members' PII.  Plaintiff has been forced to take remedial steps to protect himself from future loss.  Indeed, all Class Members are currently at a very high risk of identity theft and/or credit fraud, and prophylactic measures, such as the purchase of credit monitoring, are reasonable and necessary to prevent and mitigate future loss.

8.      As a result of Defendants' wrongful actions and inactions, patient information was stolen.  Many Quest patients and individuals whose billings were handled by Optum and AMCA have had their PII compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages.

9.      Further, despite the fact that the breach first occurred on August 1, 2018, Defendants have failed whatsoever to directly notify the affected individuals of the breach.  On June 3, 2019—over ten months after the breach first occurred—

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

3

Quest issued an SEC form 8-K informing its investors that "[o]n May 14, 2019, American Medical Collection Agency (AMCA), a billing collections vendor, notified Quest Diagnostics Incorporated ("Quest Diagnostics") and Optum360 LLC, Quest Diagnostics' revenue cycle management provider, of potential unauthorized activity on AMCA's web payment page."  Form 8-K, attached hereto as **Exhibit A**.  Both AMCA and Optum have failed to issue any statement whatsoever, and no Defendant has directly informed the patients at issue, although the SEC filing was widely reported.

## THE PARTIES

10. Plaintiff Mark Woods is a California citizen residing in Santa Monica, California.  Plaintiff is a patient of Quest who gave his PII to Quest, whose billing was handled by Optum, and whose payment was referred to AMCA for collections. Plaintiff entered a contract with Quest which incorporated a contractually binding privacy policy.  Plaintiff was a third-party beneficiary to contracts between Quest and Optum, Optum and AMCA, and Quest and AMCA, which also contained privacy policies protecting his PII.

11. Plaintiff is informed and believes that, as a result of the data breach that took place at AMCA, Plaintiff's PII was accessed by hackers.  As a result, Plaintiff has to purchase credit and personal identity monitoring service to alert him to potential misappropriation of his identity and to combat risk of further identity theft.  At a minimum, therefore, Plaintiff has suffered compensable damages because he will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss. Exposure of Plaintiff's PII as a result of the data breach has placed him at imminent, immediate and continuing risk of further identity theft-related harm.

12. Defendant Quest is a Nevada corporation with its principal offices located in Secaucus, New Jersey.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

13. Defendant Optum is a Delaware limited liability company with its principal offices located in Eden Prairie, Minnesota.

14. Defendant AMCA is a Delaware corporation with its principal offices located in Elmsford, New York.

15. Plaintiff is unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 10. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 10 if and when ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each of the defendants sued herein as a DOE proximately caused injuries and damages to Plaintiff and Class Members as set forth below.

16. As used herein, "Defendants" shall refer to Quest, Optum, AMCA and Does 1 to 10, collectively.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from the Defendants, there are more than 100 putative class members, and the amount in controversy exceeds $5 million.

18. The Court has personal jurisdiction over Defendants because Plaintiff's and Class Members' claims arise out Defendants' business activities conducted in the State of California, and through their interactive websites through which they conduct business with California citizens.

19. Venue is appropriate in this District because, among other things: (a) Plaintiff resides in this District, (b) Defendants maintain offices in this District, where they conduct substantial business; (c) Defendants directed their activities at residents in this District; and (d) many of the acts and omissions that give rise to

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

this Action took place in this judicial District.

20.    Venue is further appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct a large amount of their business in this District, and because Defendants have substantial relationships in this District.

## FACTUAL ALLEGATIONS

### A. The Data Breach

21.    Defendant Quest is a medical provider operating innumerable medical testing facilities throughout the country and abroad.  Defendant Optum handles billing for Defendant Quest, and Defendant AMCA handles accounts in collection for both Optum and Quest.  On June 3, 2019, Quest issued a Form 8-K with the Securities and Exchange Commission describing a data breach which had occurred with AMCA and which affected its patients.  Form 8-K attached hereto as **Exhibit A**.  The form states that "[o]n May 14, 2019, American Medical Collection Agency (AMCA), a billing collections vendor, notified Quest Diagnostics Incorporated ("Quest Diagnostics") and Optum360 LLC, Quest Diagnostics' revenue cycle management provider, of potential unauthorized activity on AMCA's web payment page." *Id*.

22.    The form further states that "AMCA has informed Quest Diagnostics and Optum360 that:

- [B]etween August 1, 2018 and March 30, 2019 an unauthorized user had access to AMCA's system that contained information that AMCA had received from various entities, including Quest Diagnostics, and information that AMCA collected itself;

- [T]he information on AMCA's affected system included financial information (*e.g.*, credit card numbers and bank account information), medical information and other personal information (*e.g.*, Social Security Numbers);

- [A]s of May 31, 2019, AMCA believes that the number of Quest

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

Diagnostics patients whose information was contained on AMCA's affected system was approximately 11.9 million people; and

- AMCA has been in contact with law enforcement regarding the incident." *Id*.

23. Quest made repeated promises and representations to Plaintiff and the Class Members on its website and in physical form, that it would protect its patients' PII from disclosure to unauthorized third parties. Specifically, its Privacy Policy provides that:

"[w]e will not disclose any personal information to any third party (excluding our contractors to whom we may provide such information for the limited purpose of providing services to us and who are obligated to keep the information confidential), unless (1) you have authorized us to do so; (2) we are legally required to do so, for example, in response to a subpoena, court order or other legal process and/or, (3) it is necessary to protect our property rights related to this website. We also may share aggregate, non-personal information about website usage with unaffiliated third parties.

Quest Privacy Policy, attached hereto as **Exhibit B**.

24. The Privacy Policy also states:

We exercise great care to protect your personal information. This includes, among other things, using industry standard techniques such as firewalls, encryption, and intrusion detection. . . . In addition, we limit Quest Diagnostics' employees and contractors' access to personal information. Only those employees and contractors with a business reason to know have access to this information. We educate our employees about the importance of maintaining confidentiality of customer information.

*Id*.

25. Quest promised that it would exercise "great care" to keep the PII confidential and would not disclose Plaintiff's and the Class Members' PII to any third parties, apart from those set forth in the Privacy Notice, without those patients' written authorization. In fact, it allowed hackers to obtain it.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

26.    Defendants Optum and AMCA also made repeated promises and representations to their clients, including Quest, which formed a part of their contracts with those clients, that they would protect Plaintiff and the Class Members' PII from disclosure to third parties, including taking appropriate steps to safeguard their electronic databases.  Plaintiff and the Class Members were the intended third-party beneficiaries of those promises since it was their PII, and not Quest's, Optum's, or AMCA's, which was being purportedly safeguarded and since it was Plaintiff and the Class Members, and not their employers, who would suffer the consequences of a data breach.  A motivating purpose of the promise to protect Plaintiff's and the Class Members' PII was thus to provide the benefit of data security to Plaintiff and the Class Members.  Further, permitting Plaintiff and the Class Members to bring their own breach of contract action here is consistent with the objectives of the contract and the reasonable expectations of the contracting parties because, as Quest cannot sue Optum and AMCA, and as Optum cannot sue AMCA, for disclosing the patients' PII, there is no way for Plaintiff and the Class Members to obtain redress for the breach of contract without allowing them to sue on their own behalf.

27.    Defendants Optum and AMCA promised that they would not disclose Plaintiff's and the Class Members' PII to any unauthorized third parties.  In fact, they allowed hackers to obtain it.

**B. Defendants Had an Obligation to Protect Personal Information under Federal Law.**

28.    Defendants are entitles covered by HIPAA (*see* 54 C.F.R. § 160.102) and as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information").

29.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information." 45 C.F.R.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

§ 164.502 (2009).  HIPAA also requires that Defendants implement appropriate safeguards for this information.   45 C.F.R. § 164.530(c)(1) (2009).   HIPAA additionally requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable—i.e. non-encrypted data—to unauthorized third parties.  45 C.F.R. § 164.404 (2009); 45 C.F.R. § 164.402 (2009).

30.     Additionally, HIPAA requires that Defendants:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights, *see* 45 C.F.R. § 164.312(a)(1);

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations, *see* 45 C.F.R. § 164.306(a)(1);

(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, *see* 45 C.F.R. § 164.306(a)(2);

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *see* 45 C.F.R. § 164.306(a)(3);

(e) Ensure compliance with the HIPAA security standard rules by its workforce, *see* 45 C.F.R. § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b).

31.     Defendants are prohibited by the Federal Trade Commission Act (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."  The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act.  *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

### C.  *California Recognizes the Importance of PII*

32.    California Civil Code § 1798.81.5(a)(1) states that: "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."  Section 1798.81.5(b) further provides that "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."  Further, § 1798.81.5(c) provides that "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party that is not subject to subdivision (b) shall require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

### D.  *Applicable Standards of Care*

33.    In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and the Class Members.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

34.     Defendants owed a duty to Plaintiff and the Class Members to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

35.     Defendants owed a duty to Plaintiff and the Class Members, to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

36.     Defendants owed a duty to Plaintiff and the Class Members to implement processes that would detect a breach of their data security systems in a timely manner.

37.     Defendants owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

38.     Defendants owed a duty to Plaintiff and the Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase insurance or other health care services from Defendants' or to entrust PII with Defendants.

39.     Defendants owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when data breaches occurred.

40.     Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices.  Defendant Quest collected PII from Plaintiff and the Class Members directly.  Defendants Optum and AMCA received the PII from Quest and other parties with the understanding that Plaintiff and the Class Members expected their PII to be protected from disclosure.  Defendants knew that a breach of its data systems would cause Plaintiff and the Class Members to incur damages.

/ / /

/ / /

COMPLAINT AND DEMAND FOR JURY TRIAL

### E. Stolen Information Is Valuable to Hackers and Thieves

41.    It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers.  Especially in the technology industry, the issue of data security and threats thereto is well known.  Despite well-publicized litigation and frequent public announcements of data breaches, Defendants maintained an insufficient and inadequate system to protect the PII of Plaintiff and Class Members.

42.    Legitimate organizations and members of the criminal underground alike recognize the value of PII.  Otherwise, they would not aggressively seek and pay for it.  As previously seen in one of the world's largest data breaches, hackers compromised the card holder data of 40 million of Target's customers.  *See* "Target: 40 million credit cards compromised," CNN Money, Dec. 19, 2013, *available* at http://money.cnn.com/2013/12/18/news/companies /target-credit-card/.  DataCoup is, in contrast, just one example of a legitimate business that pays users for personal information.  *See* http://money.com/money/3001361/datacoup-facebook-personal-data-privacy/.

43.    PII is highly valuable to hackers.  Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.  PII that is stolen from the point of sale are known as "dumps." *See* Krebs on Security April 16, 2016, Blog Post, *available at* https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/.  PII can be used to clone a debit or credit card.  *Id.*

44.    Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details.  During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

45.    In addition to PII, a hacked email account can be very valuable to cyber criminals.  Since most online accounts require an email address not only as a

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[1]

46.    As shown below, a hacked email account can be used to link to many other sources of information for an identity thief, including any purchase or account information found in the hacked email account.[2]



47.    Hacked information can also enable thieves to obtain other personal information through "phishing." According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing

---

[1] Identity Theft and the Value of Your Personal Data, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data.
[2] Brian Krebs, The Value of a Hacked Email Account, Krebs on Security (June 13, 2013, 3:14 PM), https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/.

COMPLAINT AND DEMAND FOR JURY TRIAL

them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[3]

### D. The Data Breach Has Resulted and Will Result in Identity Theft and Identity Fraud

48.    Defendants failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiff and Class Members.

49.    The ramifications of Defendants' failure to keep Plaintiff's and Class Members' PII secure is severe.  According to Javelin Strategy and Research, "one in every three people who is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had cards breached becoming fraud victims that same year."  "Someone Became an Identity Theft Victim Every 2 Seconds Last Year,"    Fox    Business,    Feb.    5,    2014    *available*    at http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-last-year.html.

50.    In the case of a data breach, simply reimbursing a consumer for a financial loss due to fraud does not make that individual whole again.  On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."  *See* "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf.    In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims."  *Id*. at 11.

51.    A person whose PII has been obtained and compromised may not know or experience the full extent of identity theft or fraud for years.  It may take some time for the victim to become aware of the theft or fraud.  In addition, a victim

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[3] https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf

may not become aware of fraudulent charges when they are nominal, because typical fraud-prevention algorithms fail to capture such charges. Those charges may be repeated, over and over again, on a victim's account, without notice for years.

52.    The damage from PII exposure is particularly acute in the medical context. A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage. *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010, 5:00 AM), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/. Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all. *Id.*

## F. *Annual Monetary Losses from Identity Theft are in the Billions of Dollars*

53.    According to the BJS, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014. Among identity theft victims, existing bank or credit card accounts were the most common types of misused information. *Id.*

54.    Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013. There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

See GAO, Report to Congressional Requesters, at 33 (June 2007), *available at* http://www.gao.gov/new.items/d07737.pdf.

55.    As a result of the data breach, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are also subject to a higher risk of phishing and pharming where hackers exploit information, they already obtained in an effort to procure even more PII.  Plaintiff and Class Members are presently incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies. In addition, Plaintiff and Class Members now run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

### G.  *Plaintiff and Class Members Suffered Damages*

56.    The exposure of Plaintiff's and Class Members' PII to unauthorized third-party hackers was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and disclosure, as required by their contracts with Plaintiff and the Class Members, and state and federal law.  The data breach was also a result of Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' PII in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and state and federal law.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

57.    Plaintiff's and Class Members' PII is private and sensitive in nature and was inadequately protected by Defendants.    Defendants did not obtain Plaintiff's and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

58.    As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting data breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

59.    Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    The improper disclosure, compromising, and theft of their PII;

b.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of unauthorized third-party hackers and misused via the sale of Plaintiff's and Class Members' information on the Internet black market;

c.    The untimely and inadequate notification of the data breach;

d.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

e.  Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market; and

f.  Overpayments to Defendants for any fees paid by Plaintiff and Class Members for medical services as implied in the fees paid to Quest by Plaintiff and Class Members that some amount of the fees would be applied to the costs of implementing reasonable and adequate safeguards and security measures that would protect their PII, which Defendants failed to implement and, as a result, Plaintiff and Class Members did not receive what they paid for and were overcharged by Defendants.

## CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this action on his own behalf and on behalf of all others similarly situated under Rule 23(a), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.  The Class is divided into three Classes as follows:

The Quest Class:

All persons residing in the State of California who were patients of Quest Diagnostics Inc. during the time period of August 1, 2018 to March 30, 2019, and whose Personal Identifying Information was compromised as a result of the breach disclosed by Quest Diagnostics Inc. to the Securities Exchange Commission on or about June 3, 2019.

The Optum Class:

All persons residing in the State of California who were billed for services by Optum 360, LLC during the time period of August 1, 2018 to March 30, 2019, and whose Personal Identifying Information was compromised as a result of the breach disclosed by Quest Diagnostics Inc. to the Securities Exchange Commission on or about June 3, 2019.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

The AMCA Class:

All persons residing in the State of California whose debt was collected or attempted to be collected by American Medical Collection Agency during the time period of August 1, 2018 to March 30, 2019, and whose Personal Identifying Information was compromised as a result of the breach disclosed by Quest Diagnostics Inc. to the Securities Exchange Commission on or about June 3, 2019.

61.    Excluded from the Class are: (a) Defendants, including any entity in which any of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families.  Plaintiff reserves the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

62.    *Numerosity*. The members of the Class are so numerous that the joinder of all Class Members is impractical.  While the exact number of Class Members is unknown to Plaintiff at this time, given the number of CMG patients in California, it stands to reason that the number of Class Members is at least in the hundreds.  Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as account information.

63.    *Commonality and Predominance*. There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether Defendants owed a duty of care to Plaintiff and Class Members with respect to the security of their PII;

b.  What security measures must be implemented by Defendants to comply with their duty of care;

c.  Whether Defendants met the duty of care owed to Plaintiff and the

19

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

Class Members with respect to the security of the PII;

d.  Whether Defendants have a contractual obligation to Plaintiff and Class Members to use reasonable security measures;

e.  Whether Defendants have complied with any contractual obligation to use reasonable security measures;

f.  What security measures must be implemented by Defendants to comply with their contractual obligations to use reasonable security measures;

g.  Whether Defendants' acts and omissions described herein violated the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E.

h.  Whether Defendants' acts and omissions described herein violated the Federal Trade Commission Act (15 U.S.C. § 45);

i.  Whether Defendants' acts and omissions described herein violated California Civil Code § 1798.81.5;

j.  What security measures, if any, must be implemented by Defendants to comply with its contractual and statutory obligations;

k.  The nature of the relief, including equitable relief, to which Plaintiff and Class Members are entitled; and

l.  Whether Plaintiff and Class Members are entitled to damages, civil penalties and/or injunctive relief.

64.  *Typicality*. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of each of the other Class Members, was exposed and/or improperly disclosed by Defendants.

65.  *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action

1    vigorously. Plaintiff and Class Members have a unified and non-conflicting interest

2    in pursuing the same claims and obtaining the same relief. Therefore, all Class

3    Members will be fairly and adequately represented by Plaintiff and his counsel.

4        66.    *Superiority of Class Action.* A class action is superior to other available

5    methods for the fair and efficient adjudication of the claims alleged in this action.

6    The adjudication of this controversy through a class action will avoid the possibility

7    of inconsistent and potentially conflicting adjudications of the asserted claims.

8    There will be no difficulty in the management of this action as a class action, and

9    the disposition of the claims of the Class Members in a single action will provide

10   substantial benefits to all parties and to the Court. Damages for any individual Class

11   Member are likely insufficient to justify the cost of individual litigation so that, in

12   the absence of class treatment, Defendants' violations of law inflicting substantial

13   damages in the aggregate would go un-remedied.

14       67.    Class certification is also appropriate because Defendants have acted

15   or refused to act on grounds generally applicable to the Class Members, such that

16   final injunctive relief or corresponding declaratory relief is appropriate as to the

17   Class as a whole.

18

19                          **FIRST CAUSE OF ACTION**

20   (Breach of Express And/or Implied Contractual Promise on Behalf of the Quest

21                       Class as Against Defendant Quest)

22       68.    Plaintiff repeats and incorporates herein by reference each and every

23   allegation contained in paragraphs 1 through 67, inclusive, of this Complaint as if

24   set forth fully herein.

25       69.    Quest solicited and invited Plaintiff and Class Members to become

26   patients of Quest. Plaintiff and Class Members accepted Quest's offers, became

27   patients of Quest, and entered into contracts for medical services with Quest.

28

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

70.    Quest's Privacy Policy formed a part of its contract with Plaintiff and the Class Members.  Accordingly, the Privacy Policy is contractually binding upon Quest with regard to Plaintiff and each of the Class members.

71.    The Privacy Policy describes Quest's contractual duty to safeguard and protect Plaintiff's and the Class Members' PII. Specifically, Quest promised that "[w]e will not disclose any personal information to any third party (excluding our contractors to whom we may provide such information for the limited purpose of providing services to us and who are obligated to keep the information confidential), unless (1) you have authorized us to do so; (2) we are legally required to do so, for example, in response to a subpoena, court order or other legal process and/or, (3) it is necessary to protect our property rights related to this website" and stated that "[w]e exercise great care to protect your personal information."

72.    The contractual duty to protect and safeguard Plaintiff's and the Class Members' PII, which Quest promised to undertake, was, even apart from the language of the Privacy Policy, a term of the contract by operation of law under the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, under Federal Trade Commission Act (15 U.S.C. § 45), and under Cal. Civ. Code §§ 1798.81.5(a)(1), (b), and (c).  Under California law, all laws in place at the time a contract is entered which are relevant to the subject matter of that contract become binding terms of the contract.  *Akopyan v. Wells Fargo Home Mortg., Inc.*, 215 Cal. App. 4th 120, 135, 155 Cal. Rptr. 3d 245, 253 (2013) "[A]ll applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." ' [Citation.]") (quoting *Swenson v. File* (1970) 3 Cal.3d 389, 393, 90 Cal.Rptr. 580, 475 P.2d 852.).  Therefore, the HIPAA Privacy Rule and Security Rule, the FTCA, and § 1798.81.5 also formed a contractual term in each of Quest's contracts with Plaintiff and the Class Members.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

73.    Finally, the promise to safeguard and protect Plaintiff's and the Class Members' PII, and keep that PII from being accessed by third parties, was implied as a matter of law because Quest, Plaintiff, and the Class Members entered their agreements with the expectation and implied mutual understanding that Quest would strictly maintain the confidentiality of the PII and safeguard it from theft or misuse.

74.    Therefore, Plaintiff and Class Members became patients of Quest pursuant to the mutually agreed-upon contracts with Quest under which Quest agreed to: (a) implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' personal information from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiff's and Class Members' PII.

75.    Plaintiff and Class Members would not have provided and entrusted their PII to Quest in the absence of the proper security safeguards and the promise to keep their PII safe.

76.    Plaintiff and Class Members fully performed their obligations under their agreements with Quest.

77.    Quest breached the contractual promise that it made to Plaintiff and Class Members by failing to: (a) implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiff's and Class Members' PII.

78.    Plaintiff and Class Members have lost the benefit of their bargain with Quest by having their PII compromised and exposed and by being placed at an imminent, immediate and continuing risk of identity theft-related harm.  Plaintiff and the Class Members' contractual expectation was that their PII would be safeguarded and protected.  Therefore, they paid more for Quest's services than they would have paid had they known that their PII would not be protected.  Further,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

due to the fact that their PII was not protected, Plaintiff and the Class Members incurred losses associated with the loss of PII privacy, including theft, identity theft, and the risk of theft and identity theft, along with the necessity of cancelling credit cards and paying for additional protection through the market.  Plaintiff and the Class Members also accepted pricing terms which they would not have agreed to had they known that Quest would not protect their PII.

79.    As a direct and proximate result of Quest's breaches of the contractual promises alleged herein, Plaintiff and Class Members sustained actual losses and damages in an amount according to proof at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

(Breach of Express And/or Implied Contractual Promise on Behalf of the Optum and AMCA Classes as Against Defendants Optum and AMCA)

80.    Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 79, inclusive, of this Complaint as if set forth fully herein.

81.    Defendants Optum and AMCA were parties to contracts with Plaintiffs' and the Class Members' medical providers and/or billing agents, pursuant to which Defendants obtained Plaintiffs' and the Class Members' PII for the purposes of billing and/or collections.

82.    As a part of these contracts, Optum and AMCA promised to maintain adequate safeguards to protect the PII from disclosure to unauthorized third parties, and also promised not to disclose the PII to unauthorized third parties.

83.    Plaintiffs and the Class Members were the intended third party beneficiaries of these promises since it was their PII, and not their medical providers' or billing agents', which was promised to be safeguarded and since it was Plaintiffs and the Class Members, and not their employers, who would suffer

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

the consequences of a data breach. A motivating purpose of the promise to protect Plaintiffs' and the Class Members' PII was thus to provide the benefit of data security to Plaintiffs and the Class Members.

84.     Further, permitting Plaintiffs and the Class Members to bring their own breach of contract action here is consistent with the objectives of the contract and the reasonable expectations of the contracting parties because, as the employers cannot sue Defendants for disclosing their employees' PII, there is no way for Plaintiffs and the class Members to obtain redress for the breach of contract without allowing them to sue on their own behalf.

85.     Accordingly, Optum's and AMCA's promises to safeguard and protect the PII are contractually binding upon Optum and AMCA with regard to Plaintiffs and each of the Class members.

86.     The contractual duty to protect and safeguard Plaintiff's and the Class Members' PII, which Optum and AMCA promised to undertake, was, even apart from the language of the contracts, a term of the contracts by operation of law under the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E., under Federal Trade Commission Act (15 U.S.C. § 45), and under Cal. Civ. Code §§ 1798.81.5(a)(1), (b), and (c). Under California law, all laws in place at the time a contract is entered which are relevant to the subject matter of that contract become binding terms of the contract. *Akopyan v. Wells Fargo Home Mortg., Inc.*, 215 Cal. App. 4th 120, 135, 155 Cal. Rptr. 3d 245, 253 (2013) "[A]ll applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." ' [Citation.]") (quoting *Swenson v. File* (1970) 3 Cal.3d 389, 393, 90 Cal.Rptr. 580, 475 P.2d 852.). Therefore, the HIPAA Privacy Rule and Security Rule, the FTCA, and § 1798.81.5 also formed a contractual term in each of Quest's contracts with Plaintiff and the Class Members.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

87.    Particularly, § 1798.81.5(c) provides that a business which discloses PII to third parties must require by contract that the third party implement and maintain reasonable security procedures and practices.  Therefore, the contracts entered by Optum and AMCA pursuant to which they received the PII of Plaintiff and the Class Members by operation of law were required to contain the promises to protect that PII which Plaintiff and the Class Members here seek to enforce.

88.    Finally, the promise to safeguard and protect Plaintiffs' and the Class Members' PII, and keep that PII from being accessed by third parties, was implied as a matter of law because Optum, AMCA, and the other contracting parties entered their agreements with the expectation and implied mutual understanding that Optum and AMCA would strictly maintain the confidentiality of the PII and safeguard it from theft or misuse.

89.    Therefore, Plaintiff and Class Members are third-party beneficiaries of the contracts between Optum, AMCA, and the other contracting parties in which Optum and AMCA agreed to: (a) implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' personal information from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiffs' and Class Members' PII.

90.    Quest and the other contracting parties would not have provided and entrusted the PII to Optum and AMCA in the absence of the proper security safeguards and the promise to keep their PII safe.

91.    Quest and the other contracting parties fully performed their obligations under their agreements with Optum and AMCA.

92.    Optum and AMCA breached the contractual promises by failing to: (a) implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to

Plaintiffs' and Class Members' PII.

93.    Plaintiffs and the Class Members' expectation was that their PII would be safeguarded and protected.  Therefore, they agreed to pricing terms to which they would not have agreed had they known that their PII would not be protected. Further, due to the fact that their PII was not protected, Plaintiffs and the Class Members incurred losses associated with the loss of PII privacy, including theft, identity theft, and the risk of theft and identity theft, along with the necessity of cancelling credit cards and paying for additional protection through the market.

94.    As a direct and proximate result of Optum's and AMCA's breaches of the contractual promises alleged herein, Plaintiffs and Class Members sustained actual losses and damages in an amount according to proof at trial but in excess of the minimum jurisdictional requirement of this Court.

## THIRD CAUSE OF ACTION

(Breach of Covenant of Good Faith and Fair Dealing on behalf of the Quest Class as Against Quest)

95.    Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 94, inclusive, of this Complaint as if set forth fully herein.

96.    California law implies a covenant of good faith and fair dealing in every contract.

97.    Plaintiff and Class Members contracted with Quest by accepting Quest's offers and becoming patients of Quest.

98.    Plaintiff and Class Members performed all of their duties under their agreements with Quest.

99.    All of the conditions required for Quest's performance under the contracts have occurred.

100.    Incorporated in the contracts as a matter of law was the covenant of

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd. 12th Floor
Los Angeles, CA 90010-1137

good faith and fair dealing, which prevents a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement. The implied covenant imposes on a contracting party not only the duty to refrain from acting in a manner that frustrates performance of the contract, but also the duty to do everything that the contract presupposes that the contracting party will do to accomplish its purposes.

101.    Here the implied covenant of good faith and fair dealing required Quest to safeguard and protect from disclosure to third parties the PII of Plaintiff and the Class Members which was turned over to Quest only for the purposes of performing or procuring medical services for Plaintiff and the Class Members. Plaintiff and the Class Members could not enjoy Quest's services without the safeguarding and protection of the PII.

102.    Quest breached the covenant of good faith and fair dealing implied in its contracts with Plaintiff and Class Members by engaging in the following conscious and deliberate acts: (a) failing to implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided access to Plaintiff's and Class Members' PII. Quest's failure to protect the PII of Plaintiff and Class Members frustrated Plaintiff's and the Class Members' rights to the benefit of their bargains with Quest, to enjoy the financial services of Quest without incurring risks of property and identity theft.

103.    Plaintiff and Class Members have lost the benefit of their bargain with Quest by having their PII compromised and have been placed at an imminent, immediate and continuing risk of identity theft-related harm.

104.    As a direct and proximate result of Quest's breach of the covenant of good faith and fair dealing, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

28

minimum jurisdictional requirement of this Court.

## <u>FOURTH CAUSE OF ACTION</u>

(Breach of Covenant of Good Faith and Fair Dealing on behalf of the Optum and AMCA Classes as Against Optum and AMCA)

105.   Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 104, inclusive, of this Complaint as if set forth fully herein.

106.   Applicable law implies a covenant of good faith and fair dealing in every contract.

107.   Plaintiffs and Class Members were the third-party beneficiaries of contracts between their medical providers and/or those medical providers' billing agents and Optum and/or AMCA.

108.   The contracting medical providers and/or billing agents performed all of their duties under their agreements with Optum and AMCA.

109.   All of the conditions required for Optum's and AMCA's performance under the contracts have occurred.

110.   Incorporated in the contracts as a matter of law was the covenant of good faith and fair dealing, which prevents a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.  The implied covenant imposes on a contracting party not only the duty to refrain from acting in a manner that frustrates performance of the contract, but also the duty to do everything that the contract presupposes that the contracting party will do to accomplish its purposes.

111.   Here the implied covenant of good faith and fair dealing required Optum and AMCA to safeguard and protect from disclosure to third parties the PII of Plaintiffs and the Class Members which was turned over to Optum and AMCA only for the purposes of performing or procuring professional services.  Plaintiff

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

and the Class Members could not enjoy Optum's and AMCA's services without the safeguarding and protection of the PII.

112. Optum and AMCA breached the covenant of good faith and fair dealing implied in their contracts by engaging in the following conscious and deliberate acts: (a) failing to implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided access to Plaintiffs' and Class Members' PII. Defendants' failure to protect the PII of Plaintiffs and Class Members frustrated Plaintiffs' and the Class Members' rights to the benefit of their employers' bargains with Defendant, to enjoy the professional services of Defendant without incurring risks of property and identity theft.

113. Plaintiffs and Class Members have lost the benefit of Optums' and AMCA's contracts by having their PII compromised and have been placed at an imminent, immediate and continuing risk of identity theft-related harm.

114. As a direct and proximate result of Optum's and AMCA's breach of the covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.


## **FIFTH CAUSE OF ACTION**

(Violation of California Business and Professions Code § 17200 *et. seq.* on Behalf of the Quest Class as Against Defendant Quest)

115. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 114, inclusive, of this Complaint as if set forth fully herein.

116. By their actions and conduct as alleged herein, Defendants have

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

committed one or more acts of unfair competition within the meaning of California Business and Professions Code § 17200 ("UCL") that constitute unfair, unlawful and/or fraudulent business practices as those terms are defined under California law.

117.    Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and the Class Members.  The exposure of PII to third parties is substantially injurious because of the significant harm that can result to the customer at the hand of those third parties, and the protective measures that the customer must undertake as a direct result of this exposure.    Further, the impact of the practice against Plaintiff and the Class Members far outweighs any possible justification or motive on the part of Defendant.  Plaintiff and the Class Members could not reasonably have avoided this injury because they relied upon Defendant's promises to protect and safeguard the PII from disclosure, as all consumers must who require medical attention.

118.    Defendants' failure to safeguard and protect Plaintiff's and the Class Members' PII is violative of public policy as expressed in the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, which provides that all medical providers must protect the sensitive medical information provided to them by their patients, and may not disclose PII to any unauthorized third parties.  Defendants' failures and deficiencies are also violative of public policy as expressed in the Federal Trade Commission Act (15 U.S.C. § 45).   The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015).  Defendants' failures and deficiencies are also violative of public policy as expressed in California Civil Code §§ 1798.81.5(a)(1), (b), and (c), which provide that businesses are required to protect the PII in their possession from disclosure,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

and are required to include, in any contracts with third parties with whom the PII is shared, a requirement to do the same.

119. Defendants' business practices are also unfair because they significantly threaten or harm competition. Participation in today's credit economy is predicated on the security of the PII of the participants in that economy, in the sense that PII is an asset of the individual which, if lost to him or her, jeopardizes his or her very ability to maintain capital. Competitive economic activity cannot exist where PII goes unprotected.

120. Defendants' business practices are unlawful under the UCL because Defendants have violated HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, the FTCA, 15 U.S.C. § 45, and Cal. Civ. Code § 17981.81.5.

121. Defendants violated HIPAA, the FTCA, and § 17981.81.5 by: (a) failing to implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided with access to Plaintiff's and Class Members' PII.

122. Defendants' business practices are also fraudulent under the UCL because they involved representations to the public which are likely to deceive the public. Defendant Quest provides to its customers a Privacy Policy which states that Quest will take appropriate steps to protect PII from disclosure to unauthorized third parties, and will not disclose the PII to any third parties other than those disclosed in the Policy. This Privacy Policy contains false statements, inasmuch as Quest does not in fact take appropriate steps to attempt to safeguard the PII, and did in fact allow for the disclosure of the PII to unauthorized third parties.

123. Defendants' representations are likely to deceive the public because they are untrue and because they indicate that Defendants will protect the PII of their customers from disclosure to unauthorized third parties, when in fact they will

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

not do so. A reasonable consumer would be likely to believe that his or her PII will be protected by Defendants, when that is not the case. Moreover, Plaintiff and the Class Members relied on Defendant's representations in entering into contracts with Defendants for medical services, which they would not have entered had they known their PII would be unprotected.

124. Plaintiff and the Class Members have suffered monetary injury in fact as a direct and proximate result of the acts of unfair competition committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

## SIXTH CAUSE OF ACTION

(Violation of California Business and Professions Code § 17200 *et. seq.* on Behalf of the Optum and AMCA Classes as Against Defendants Optum and AMCA)

125. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 124, inclusive, of this Complaint as if set forth fully herein.

126. By their actions and conduct as alleged herein, Defendants have committed one or more acts of unfair competition within the meaning of California Business and Professions Code § 17200 ("UCL") that constitute unfair and/or unlawful business practices as those terms are defined under California law.

127. Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and the Class Members. The exposure of PII to third parties is substantially injurious because of the significant harm that can result to the customer at the hand of those third parties, and the protective measures that the customer must undertake as a direct result of this exposure. Further, the impact of the practice against Plaintiff and the Class

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Members far outweighs any possible justification or motive on the part of Defendant. Plaintiff and the Class Members could not reasonably have avoided this injury because they relied upon Defendant's promises to protect and safeguard the PII from disclosure, as all consumers must who require medical attention.

128. Defendants' failure to safeguard and protect Plaintiff's and the Class Members' PII is violative of public policy as expressed in the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, which provides that all medical providers must protect the sensitive medical information provided to them by their patients, and may not disclose PII to any unauthorized third parties. Defendants' failures and deficiencies are also violative of public policy as expressed in the Federal Trade Commission Act (15 U.S.C. § 45). The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015). Defendants' failures and deficiencies are also violative of public policy as expressed in California Civil Code §§ 1798.81.5(a)(1), (b), and (c), which provide that businesses are required to protect the PII in their possession from disclosure, and are required to include, in any contracts with third parties with whom the PII is shared, a requirement to do the same.

129. Defendants' business practices are also unfair because they significantly threaten or harm competition. Participation in today's credit economy is predicated on the security of the PII of the participants in that economy, in the sense that PII is an asset of the individual which, if lost to him or her, jeopardizes his or her very ability to maintain capital. Competitive economic activity cannot exist where PII goes unprotected.

130. Defendants' business practices are unlawful under the UCL because Defendants have violated HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

160 and Part 164, Subparts A and E, the FTCA, 15 U.S.C. § 45, and Cal. Civ. Code § 17981.81.5.

131.    Defendants violated HIPAA, the FTCA, and § 17981.81.5 by: (a) failing to implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided with access to Plaintiff's and Class Members' PII.

132.    Plaintiff and the Class Members have suffered monetary injury in fact as a direct and proximate result of the acts of unfair competition committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

## SEVENTH CAUSE OF ACTION

(Negligence on Behalf of All Class Members as Against All Defendants)

133.    Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 132, inclusive, of this Complaint as if set forth fully herein.

134.    As described above, Defendants owed Plaintiff and the Class Members duties of care in the handling of PII, which duties included keeping that PII safe and preventing disclosure of that PII to all unauthorized third parties.

135.    Additionally, Defendants had a duty to Plaintiffs and the Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII as required by Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, California Civil Code § 1798.81.5 and Federal Trade Commission Act (15 U.S.C. § 45). This legal duty arises outside of any contractual, implied or express, responsibilities that Defendants had between Plaintiff and Class Members, as it is "completely independent" of any contract. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Cal.4th 979 (2004).

136.   HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information." 45 C.F.R. § 164.502 (2009). HIPAA also requires that Defendants implement appropriate safeguards for this information. 45 C.F.R. § 164.530(c)(1) (2009). HIPAA additionally requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable—i.e. non-encrypted data—to unauthorized third parties. 45 C.F.R. § 164.404 (2009); 45 C.F.R. § 164.402 (2009).

137.   Additionally, HIPAA requires that Defendants:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights, *see* 45 C.F.R. § 164.312(a)(1);

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations, *see* 45 C.F.R. § 164.306(a)(1);

(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, *see* 45 C.F.R. § 164.306(a)(2);

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *see* 45 C.F.R. § 164.306(a)(3);

(e) Ensure compliance with the HIPAA security standard rules by its workforce, *see* 45 C.F.R. § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b).

138.   Plaintiff and Class Members are within the class of persons that HIPAA was intended to protect.

139.   Defendants violated the above listed regulations by disclosing the PII to third parties and by failing to implement adequate security measures to protect

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

the PII, including failing to:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights;

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations;

(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information;

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information;

(e) Ensure compliance with the HIPAA security standard rules by its workforce; and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information.

140.    Defendants also violated §§ 164.404 (2009) and 164.402 (2009) by failing to provide timely notice of the breach to Plaintiff and the Class Members.

141.    The harm that occurred as a result of the security breach is the type of harm that HIPAA was intended to guard against. HIPAA directly requires subject entities to protect the health information of individuals such as Plaintiff and the Class Members.

142.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

143.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

144.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

applicable industry standards, as described herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII in its stores obtained and stored, and the foreseeable consequences of a data breach at a company as large as Defendants', including, specifically, the damages that would result to Plaintiffs and Class members.

145.    The harm that occurred as a result of the security breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

146.    California Civil Code § 1798.81.5(a)(1) states that: "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information." Section 1798.81.5(b) further provides that "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Further, § 1798.81.5(c) provides that "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party that is not subject to subdivision (b) shall require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

147.    Plaintiff and Class Members are within the class of persons that § 1798.81.5 was intended to protect.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

148.    Defendants violated § 1798.81.5 by adopting inadequate safeguards to protect the PII, and, on information and belief, failing to adopt industry-wide standards in their supposed protection of the PII, resulting in the disclosure of the PII to unauthorized third parties.

149.    The harm that occurred as a result of the security breach is the type of harm that § 1798.81.5 was intended to guard against. Section 1798.81.5 clearly identifies businesses such as Defendants who possess personal information about California residents and imposes on those businesses a duty to implement security procedures and practices which protect that personal information.

150.    Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

151.    In addition to their obligations under state and federal law, Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and the Class Members.

152.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

153.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

154. Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to implement processes that would detect a breach of their data security systems in a timely manner.

155. Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to act upon data security warnings and alerts in a timely fashion.

156. Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase insurance or other health care services from Defendants' or to entrust PII with Defendants.

157. Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to disclose in a timely and accurate manner when data breaches occurred.

158. Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendants collected PII from Plaintiff and the Class Members directly. Defendants knew that a breach of its data systems would cause Plaintiff and the Class Members to incur damages.

159. Defendants breached those duties of care by adopting inadequate safeguards to protect the PII, and, on information and belief, failing to adopt industry-wide standards in their supposed protection of the PII, resulting in the disclosure of the PII to unauthorized third parties.

160. As a direct and proximate result of Defendants' failure to adequately protect and safeguard the PII, Plaintiff and the Class members suffered damages. Plaintiff and the Class Members were damaged because their PII was accessed by

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

third parties, resulting in increased risk of identity theft and theft of property, and for which Plaintiff and the Class members were forced to adopt costly and time-consuming preventive and remediating efforts.  Plaintiff and the Class Members were also damaged in that they paid for Defendants' services in an amount that they would have refused to pay had they known that Defendants would not protect their PII.  Plaintiff and the Class Members accepted pricing terms which they would not have agreed to had they known that Defendants would not protect their PII.

161.   Defendants acted with wanton disregard for the security of Plaintiff's and the Class Members' PII.  Defendants knew or should have known that CMG had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the PII of health care providers' databases, such as CMG's.

162.   The injury and harm suffered by Plaintiff and the Class Members was the reasonably foreseeable result of Defendants' breach of their duties.  Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff and the Class Members to experience the foreseeable harm associated with the exposure of their PII.

163.   A "special relationship" exists between Defendants and Plaintiff and the Class Members.  Defendants entered into a "special relationship" with Plaintiff and the Class Members when they contracted with Plaintiff and the Class Members for medical services and obtained their PII from them and/or when they accepted Plaintiff's and the Class Members' PII from third parties.  As providers of health care services and/or related services, Defendants stand in a fiduciary or quasi-fiduciary relationship with Plaintiff and the Class Members.

164.   Plaintiff and the Class Members have suffered monetary injury in fact as a direct and proximate result of the acts committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

COMPLAINT AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

1.    For compensatory damages in an amount according to proof at trial;

2.    For restitutionary damages in an amount according to proof at trial;

3.    For affirmative injunctive relief mandating that Defendants implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure;

4.    For costs of suit and litigation expenses;

5.    For attorneys' fees under the common fund doctrine and all other applicable law; and

6.    For such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of themselves and all others similarly situated, hereby demands a jury trial for all claims so triable.


Dated: July 5, 2019                     Respectfully submitted,


/s/ *Thiago M. Coelho*
Thiago M. Coelho
Justin F. Marquez
Robert Dart
Patty Chen
**WILSHIRE LAW FIRM**
*Attorneys for Plaintiff and
the proposed class*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137